IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

ANTONIO EMILIO HUPAN, et. al.,    )
                                   )
           Plaintiffs,            )     C.A. No. N12C-02-171-VLM
                                   )
           v.                   )
                                   )
ALLIANCE ONE INTERNATIONAL,    )
INC., et. al.,                    )
                                 )
           Defendants       )

Submitted: August 21, 2015
Decided: November 30, 2015

Upon Consideration of Defendant Philip Morris Global Brands Inc.'s Motion to Dismiss under Principles of Forum Non Conveniens, **GRANTED**.

Upon Consideration of Philip Morris USA Inc.'s Motion to Dismiss Based on Forum Non Conveniens, **GRANTED**.

Upon Consideration of Monsanto's Motion to Dismiss Based on 12(b)(6) and 9(b), **GRANTED with leave to amend.**

# OPINION

Richard S. Gebelein, Esquire, Ian Connor Bifferato, Esquire, J. Zachary Haupt, Esquire, Bifferato LLC, Wilmington, DE, Attorneys for Plaintiffs.

Donald E. Reid, Esquire, Morris Nichols Arsht & Tunnell LLP, Wilmington, DE, Attorney for Defendant Philip Morris Global Brands, Inc.

David J. Soldo, Esquire, Morris James LLP, Wilmington, DE, Attorney for Defendant Philip Morris USA, Inc.

Kelly E. Farnan, Esquire, Richards Layton & Finger PA, Wilmington, DE, Attorney for Defendant Monsanto Company.

**MEDINILLA, J.**

**[THE TEXT OF THE OPINION WILL BEGIN ON THE NEXT PAGE]**

## INTRODUCTION

Plaintiffs, a group of twenty-three Argentine tobacco farmers and their children, brought this action against the Defendants - Philip Morris USA, Inc., Philip Morris Global Brands, Inc., and Monsanto Company - for allegedly causing birth defects to their Plaintiff children as a result of the Plaintiff parents' exposure to dangerous chemical herbicides during the cultivation of tobacco. Philip Morris USA, Inc. and Philip Morris Global Brands, Inc. each separately move to dismiss under the doctrine of *forum non conveniens*.[1] Monsanto Company moves to dismiss under Superior Court Rules 12(b)(6) and 9(b).[2] For the reasons set forth below, the Philip Morris motions are **GRANTED** and the Monsanto motion is **GRANTED with leave to amend**.

## FACTUAL AND PROCEDURAL HISTORY

The twenty-three Plaintiffs – fifteen parents and their eight minor children – citizens and residents of Misiones Province in Argentina, are located approximately five thousand miles from Delaware.[3] The parent Plaintiff farmers allege they were required to use excessive amounts of Roundup when growing tobacco on their private farms. Plaintiffs argue that Roundup, as well as other

---

[1] Defendants also move to dismiss under Superior Court Rules 12(b)(6) and 12(b)(1). Because the *forum non conveniens* issue is dispositive, this Opinion does not address the issues raised in those separate briefings.

[2] Monsanto did not join the PM Defendants in their Motion to Dismiss for *forum non conveniens*.

[3] Misiones Province is one of twenty-three provinces of Argentina, located in the northeastern corner of the country in the Mesopotamica region. It is surrounded by Paraguay to the northwest, Brazil to the north, east and south, and Corrientes Province of Argentina to the southwest.

glyphosate-based herbicides (and other pesticides) were the proximate cause of their children's birth defects. The alleged exposure and injury timeframe is as far back as the early 1980's or approximately twelve years from the date the first Minor Plaintiff named was born on April 6, 1996 through the last born on March 17, 2008.[4]

Plaintiffs' Complaint focuses primarily on the acts and omissions of two Argentine companies who allegedly oversaw and directed Plaintiffs' use of glyphosate.[5] Plaintiffs allege that an Argentine tobacco brokerage corporation, Tabacos Norte, S.A. ("Tabacos") negligently supplied Roundup and other chemicals, requiring use of these chemicals as a condition of Tabacos's agreement with the Plaintiff farmers in order to purchase their tobacco. The current owner or parent company of Tabacos is Massalin Particulares, S.A. ("Massalin"). Neither Tabacos nor Massalin is named as a defendant in this litigation nor was suit filed against them in Argentina or anywhere else.

Plaintiffs chose not to file in Argentina and instead brought suit here in Delaware on February 14, 2012 against thirteen Defendants. Plaintiffs' counsel

---

[4] Philip Morris USA, Opening Brief at 3.
[5] *See generally* Compl.

has filed five other identical complaints in this Court against the same group of defendants. Together with this case, this represents 406 Argentine nationals.[6]

In this case, 11 Defendants were named for Tabacos' alleged negligence on legal theories that suggest these companies controlled Tabacos or Massalin. The theories of liability purport that these companies allegedly required Roundup and other chemicals to be used to ensure that the tobacco purchased directly or indirectly from them were suitable for export to the U.S. and elsewhere. Specifically, Plaintiffs named five different tobacco leaf dealers that purchased tobacco from Tabacos and Massalin, and six other separate corporate entities that Plaintiffs referenced collectively in the Complaint as the "Philip Morris Defendants."[7]

These six entities included Philip Morris International Inc. and three of its subsidiaries (Philip Morris Brands S.A.R.L., Philip Morris Global Brands, Inc., and Philip Morris Products). Plaintiffs also named two Virginia corporations (Altria Group, Inc. and Philip Morris USA, Inc.). Nine of the 11 companies were

---

[6] The other pending matters are *Aranda v. Alliance One International, Inc., et al.,* No. N13C-03-068 VLM, *Biglia v. Alliance One International, Inc., et al.,* No. 14C-01-021 VLM, *Chalanuk v. Alliance One International, Inc., et al.,* No. N12C-04-042 VLM, *Da Silva v. Alliance One International, Inc., et al.,* No. N12C-10-236 VLM, and *Taborda v. Alliance One International, Inc., et al.,* No. N13C-08-092 VLM. The parties have stayed these matters pending the outcome of this case.
[7] *See generally* Compl.

dismissed without prejudice shortly after filing suit because they are not subject to jurisdiction in Delaware.[8]

The only remaining Philip Morris defendants are Philip Morris Global Brands, Inc. and Philip Morris USA, Inc. ("PM Defendants"). The former licenses intellectual property and provides financial and accounting services to certain U.S. incorporated affiliates of Philip Morris International, Inc.[9] They are incorporated in Delaware and headquartered in Virginia. The latter is incorporated and has its principle place of business in Virginia.

PM Defendants do not manufacture or distribute Roundup or agricultural chemicals. Plaintiffs allege that PM Defendants effectively controlled the manner in which they were directed to farm the tobacco products by third-party brokers, Tabacos and Massalin. In other words, Plaintiffs' claims are dependent upon the alleged wrongdoing of the Argentine companies, Tabacos and Massalin. In order to join PM Defendants, Plaintiffs make collective allegations under the single designation of "Philip Morris Defendants" to include those previously mentioned, with all except one now having been dismissed.[10]

---

[8] On December 13, 2012, the trial judge then assigned to this matter signed a stipulation and dismissal without prejudice of Defendants Alliance One International, Inc., Altria Group, Inc., Carolina Leaf Tobacco Co., Dibrell Brothers, Inc., Dimon International, Inc., Monsanto Argentina S.A.I.C., and Universal Corporation. The matter was reassigned to this Court on March 7, 2013.

[9] Philip Morris Global Brands, Inc. Opening Brief at 4.

[10] Although there is a reference that a dismissed defendant, Philip Morris Incorporated, was once a shareholder in Massalin for a brief period in the 1980s, this is not relevant to this Court's analysis where since 1987, Massalin and Tabacos have been in the Philip Morris International chain that has no connection to either named PM Defendants.

The other two Defendants brought in by Plaintiffs were Monsanto Company and Monsanto Argentina, S.A.I.C., also collectively referenced in the Complaint as the "Monsanto Defendants". Monsanto is the manufacturer of Roundup, the trade name for the glyphosate-based herbicide. Plaintiffs dismissed Monsanto Argentina, S.A.I.C., because the corporation is not subject to jurisdiction in Delaware. The sole Monsanto Company, Inc. ("Monsanto") remains to defend against these claims.

The Complaint alleges four theories of liability against Monsanto: (1) strict liability under Article 40 of the Argentine Consumer Protection Law ("CPL"); (2) breach of warranty under either Article 11 of the CPL or Articles 511 or 512 of the Argentine Civil Code; (3) strict liability under either Article 1113 or Article 1109 of the Argentine Civil Code; and (4) negligence under Article 1109 of the Argentine Civil Code. In addition, Plaintiffs allege willful and wanton misconduct as part of their application for punitive damages. Plaintiffs seek relief against the PM Defendants based on the same causes of action against Monsanto, except they substitute an aiding and abetting claim for their warranty and strict product liability claims.

---

Furthermore, Plaintiffs have disclaimed any veil piercing claim. Finally, any shareholder status then existing was nearly a decade before the first Minor Plaintiff in this action was conceived.

From February through August, 2013, and prior to our Supreme Court's ruling in *Bell Helicopter Textron, Inc. v. Arteaga*,[11] this Court entertained briefing concerning choice of law.[12] Plaintiffs and Defendants each identified an expert witness on the law of Argentina who submitted affidavits and sat for depositions. Following extensive briefing, the parties largely agreed that the law of Argentina should govern substantive legal issues on a Rule 12(b)(6) motion to dismiss except that they disagreed on the law governing Plaintiffs' negligence and punitive damages.[13] This Court issued its ruling in February 2014 that the allegations of the Complaint were too broad to provide insufficient information to address the "most significant relationship" factors required for a choice of law inquiry.[14] In response, Defendants agreed that they would address the remaining disputes concerning choice of law pursuant to appropriate Rule 12 briefing because they intended to argue that Plaintiffs failed to state claims under either Argentine or Delaware law.

Following a joint stipulation to extend the deadlines for briefings on the issue of *forum non conveniens* and all Rule 12 motions, a hearing was scheduled

---

[11] *Bell Helicopter Textron, Inc. v. Arteaga*, 113 A.3d 1045 (Del. 2015).
[12] During this time, the Court heard from choice of law experts. The experts included Keith Rosenn and Alejandro Garro (hereinafter "Rosenn" and "Garro," respectively).
[13] Because this opinion does not address choice of law issues, it intentionally declines to get "into the weeds" on the parties' contentions regarding whether Argentine or Delaware law would apply on the claims of negligence and punitive damages.
[14] *See Integral Res. (PVT) Ltd. v. Istil Grp., Inc.*, 2004 WL 2758672 (D. Del. Dec. 2, 2004) *aff'd,* 155 F. App'x 69 (3d. Cir. 2005) (noting that the court had declined to rule on a 12(b)(6) motion "because the factual record on the choice-of-law issue was not yet fully developed," but ruling on that issue based on allegations in the complaint); *Hurst v. Gen. Dynamics Corp.*, 583 A.2d 1334, 1338 (Del. Ch. 1990) (noting that the facts need not be "fully developed through discovery," but Court must be able to determine what law is "likely to apply.").

for May 1, 2015. Presently before the Court are the following: PM Defendants' Motions to Dismiss Based on Rules 12(b)(6) and 12(b)(1) and Under Principles of *forum non conveniens* and Monsanto's Motion to Dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) and failure to allege with particularity under Rule 9(b). Plaintiffs opposed the PM Defendants' *forum non conveniens* motions in a single briefing but filed separate briefings against each of the PM Defendants and Monsanto under Rule 12(b)(6).

Prior to oral argument, on April 20, 2015, counsel for one of the PM Defendants filed a letter with the Court on behalf of *all defendants* and cited *Bell Helicopter,* decided two weeks earlier, in support of dismissal under the doctrine of *forum non conveniens.* The parties did not request additional time to brief on the implications of *Bell Helicopter* and this Court heard the matter as scheduled on May 1. However, this Court requested clarification as to the reference of "all defendants" where Monsanto had not moved for dismissal under *forum non conveniens* during oral argument or in their briefing. Monsanto clarified that it had not joined in said motions and this Court granted the parties' requests to supplement and further address regarding Monsanto's response not to join. Having considered the briefs and submissions of the parties, exhibits and appendices attached thereto, relevant case law and authorities, oral arguments and respective supplements, the matter is ripe for review.

### *Contention of the Parties*

PM Defendants seek dismissal on several grounds. First, it submits that the matter must be dismissed under the doctrine of *forum non conveniens* and resolved in Argentina because Plaintiffs have no connection to Delaware. Secondly, they assert that Plaintiffs have failed to state claims under Rule 12 (b)(6) and 12 (b)(1). Plaintiffs argue against dismissal because it would make "no sense" to dismiss the PM Defendants on grounds of *forum non conveniens* leaving only Monsanto to defend the claims in Delaware. Monsanto seeks dismissal for failure to state claims under Rule 12 (b)(6) and argues that the allegations of negligence have not been stated with particularity under Rule 9. Plaintiffs further oppose dismissal on the basis that Argentina is an inappropriate forum which would deprive them of the full remedies available in this forum. [15]

## ANALYSIS

### *Legal Standards of Forum Non Conveniens*

The doctrine of *forum non conveniens* "empowers the court to decline jurisdiction" when "litigating in the plaintiff's chosen forum would be

---

[15] One of Plaintiffs' arguments in response to the instant motion is that the dismissal for *forum non conveniens* is untimely. The Court rejects this argument. There is no bright-line rule concerning the timeliness of a *forum non conveniens* dismissal in Delaware. Moreover, delays in this case have resulted from extensions sought by both parties, and never objected to by either. While significant time and expense may have been expended in reaching this stage of the litigation, such time and expense was necessary in order to narrow the issues; the Court acknowledged as much in *Martinez I*, as similar expenses were borne in that case prior to the *forum non conveniens* dismissal, as well.

inconvenient, expensive, or otherwise inappropriate."[16] The doctrine is not statutory and is only employed in the discretion of the trial judge.[17] This Court may dismiss a complaint on *forum non conveniens* grounds if the defendant demonstrates that it would face "overwhelming hardship" if required to defend itself in this forum. While the overwhelming hardship is stringent, it is not preclusive.[18] This Court must decide whether the defendants have shown that the *forum non conveniens* factors weigh so overwhelmingly in their favor that dismissal of the Delaware litigation is required to avoid undue hardship and inconvenience to them.[19]

### *Martinez I and II*

Our Supreme Court recently provided clarification and guidance regarding the appropriate inquiry for a motion on the grounds of *forum non conveniens* in *Martinez v. E.I. DuPont de Nemours & Co., Inc.* ("*Martinez II*").[20] In that case, a group of twenty-five Argentine Plaintiffs filed claims against DuPont, the corporate great-great-grand-subsidiary of a textile plant located in Argentina. *Martinez* involved claims brought by a woman whose husband died of asbestos-

---

[16] *Martinez v. E.I. DuPont de Nemours & Co.,* 82 A.3d 1, 26 (Del. Super. Ct. 2012)(hereinafter "*Martinez I*"), aff'd 86 A.3d 1102 (Del. 2014)(hereinafter "*Martinez II*"); *Sumner Sports Inc. v. Remington Arms Co., Inc.* 1993 WL 67202, at *7 (Del.Ch. March 4, 1993)(quoting *Monsanto Co. v. Aetna Cas. And Surety Co.,* 559 A.2d 1301, 1304 (Del. Super.Ct. 1988)).

[17] *See Williams Gas Supply Co v. Apache Corp.,* 594 A.2d 344, 37 (Del. 1991) ("[a] motion to stay or dismiss on grounds of *forum non conveniens* is addressed to the sound discretion of the trial court"); *Tex. Instruments Inc. v. Cyrix Corp.,* 1994 WL 96983, at *2 (Del.Ch. March 22, 1994); *Sumner Sports,* 1993 WL 67202, at *3.

[18] *Martinez II*, 86 A.3d at 1105.

[19] *Id.*

[20] *Id.*

11

related disease after working in the Argentine textile plant. Defendant DuPont moved to dismiss, *inter alia*, on the grounds of *forum non conveniens.* As in this case, the trial court in *Martinez I* ordered extensive pleading-phase briefing and held hearings on issues concerning the application of Argentine law to the case. Ultimately, the trial Court dismissed the case based in part upon the doctrine of *forum non conveniens*.

The Delaware Supreme Court expressly affirmed the trial court's ruling that dismissal under the doctrine of *forum non conveniens* was appropriate.[21] In doing so, the Court recognized,

> the importance of the right of all parties (not only plaintiffs) to have important, uncertain questions of law decided by the courts whose law is at stake; and . . . the reality that plaintiffs who are not residents of Delaware, whose injuries did not take place in Delaware, and whose claims are not governed by Delaware law have a less substantial interest in having their claims adjudicated in Delaware.[22]

The focus of the Court's analysis is whether a defendant will face an "overwhelming hardship" if required to litigate here.[23] The Court must "consider the weight of those factors in the particular case and determine whether any or all of them truly cause both inconvenience and hardship."[24] The Court should not tally the factors individually, but rather look to the circumstances as a whole to

---

[21] *See Martinez II* 86 A.3d at 1102.
[22] *Id*. at 1111 (citation omitted).
[23] Chrysler First Bus. Credit Corp. v. 1500 Locust Ltd. P'ship, 669 A.2d 104, 107 (Del. 1995).
[24] *Id*. at 105.

determine whether an overwhelming hardship is present.[25] Further, the Court should not base its conclusion on "whether it is more difficult to litigate in Delaware than in another jurisdiction, for the premise of *forum non conveniens* is whether the defendant would face overwhelming hardship in a Delaware forum."[26] Finally, while there is a strong preference for respecting a plaintiff's choice of forum, "the public policy concerns regarding deference to a plaintiff's chosen forum are not as strong where . . . the plaintiff does not reside in Delaware."[27]

### *Cryo-Maid Factors*

Against this backdrop, where there is no prior pending action in another jurisdiction, as is the case here, the Court's *forum non conveniens* analysis is guided by the six *Cryo–Maid*[28] factors:

(1) the relative ease of access to proof;

(2) the availability of compulsory process for witnesses;

(3) the possibility of the view of the premises;

---

[25] *VTB Bank v. Navitron Proj. Corp.*, 2014 WL 1691250 (Del. Ch. Apr. 28, 2014) (citation omitted) (denying motion to dismiss on *forum non conveniens* grounds where the relief sought was for the appointment of a receiver, and Delaware provided unique expertise in the area of equitable remedies).

[26] *Id.* (citing Mar-Land Indus. Contractors, Inc. v. Caribbean Petroleum Ref., L.P., 777 A.2d 774, 781 (Del. 2001)).

[27] *VTB Bank*, 2014 WL 1691250 (citing *Martinez II*, 86 A.3d at 1106).

[28] Gen. Foods Corp. v. Cryo-Maid, Inc., 198 A.2d 681 (Del. 1964).

(4) whether the controversy is dependent upon the application of Delaware law which the courts of this State more properly should decide than those of another jurisdiction;

(5) the pendency or nonpendency of a similar action or actions in another jurisdiction; and

(6) all other practical problems that would make the trial of the case easy, expeditious and inexpensive.[68]

### 1. The relative ease of access to proof.

PM Defendants argue that they would be subject to overwhelming hardship if required to litigate in Delaware where all discovery would need to be conducted in Argentina. There are both legal and practical limitations on Defendants' access to sources of proof in this case.

As recognized in *Martinez I* and *II*, this Court does not have the means to grant access to documents, real property, or non-party witnesses in Argentina because each are beyond this Court's power of subpoena.[29] Therefore, in order to effectively mount a defense to the suit, Defendants would necessarily seek to compel production of this evidence in order to challenge Plaintiffs' multiple allegations.

---

[29] *Martinez I*, 82 A.3d at 30-32; *Martinez II*, 86 A.3d 1102.

14

For example, in order to defend against the claim that it had management and control over Plaintiffs' means of harvesting tobacco, PM Defendants would need to (1) assess the practices of other Argentine leaf brokers; (2) evaluate manuals and guides provided to the farmers; (3) depose witnesses from the third-party leaf brokers who are not parties to this litigation and who are located in Argentina; (4) view the records of other crops grown in the area of the farms where Plaintiffs were allegedly exposed to the harmful chemicals; (5) review farming records documenting practices of use of herbicides and pesticides related to chemical exposures as well as incident reports related to such exposures; and (6) review government records and other geological data.

Assuming there was a mechanism to compel the production of such discovery, PM Defendants would also need to review all medical evidence related to these claims. This is difficult to do in English, let alone in another language, which will require translation. PM Defendants would be required to review all medical records, not only for these Plaintiffs but for all 406 Plaintiffs who have filed suit here against the same group of Defendants. All of this evidence is located outside the jurisdictional authority of this Court.[30] In addition, there is nothing to suggest that any evidence is located in Delaware and, except for one of

---

[30] Defendant Philip Morris Global Brands, Inc. further notes that the process for obtaining evidence from third parties under which it has no control in a foreign country is by Letters of Request through the Hague Convention. Argentine law has opted out of this provision of the Hague Convention, and thus Argentina refuses to execute Letters of Request.

15

PM Defendants' incorporation status, this case has no Delaware connection. Accordingly, this Court finds that Defendants have satisfied the first *Cryo-Maid* factor that there is no relative ease of access to proof.

### 2.    The availability of compulsory process for witnesses

Philip Morris USA is both incorporated and has its principle place of business in Virginia.   Philip Morris Global Brands, Inc. is headquartered in Virginia. This Court accepts the parties' representations that there are no witnesses located in Delaware who will be called upon to give testimony that is relevant to this action.  Injury cases, like the instant case, requires evidence to be submitted through witnesses, such as Plaintiffs' medical providers, employers or co-workers, lifestyle witnesses, record custodians, and others to provide factual bases for their claims.

PM Defendants argue that they satisfy the second *Cryo-Maid* factor because such witnesses are in Argentina and are outside the compulsory process of Delaware Courts.  This Court acknowledges, as did the Court in *Nash,* that there is no compulsory process to bring witnesses to Delaware because all of the witnesses are located in Argentina.[31]   As a result, the expense to both Plaintiffs and Defendants to bring witnesses, all of whom are located outside of the country, to

---

[31] *Nash v. McDonald's Corp.*, 1997 WL 528036, at *3 (Del. Super. Feb. 27, 1997) (holding that compulsory process for witnesses was unavailable where all witnesses were residents of Spain and the United Kingdom).

Delaware, would be extremely high.[32] This Court also notes that it is not likely that PM Defendants will receive the same level of voluntary cooperation as Plaintiffs will receive. For example, PM Defendants have shown that third-party employees or representatives of Tabacos and Massalin deemed critical to mount a defense would likely not be forthcoming or cooperative. This Court finds that given the location of these witnesses and this Court's compulsory process, PM Defendants have established a hardship sufficient to satisfy the second *Cryo-Maid* factor.

### 3.   The possibility of the view of the premises

PM Defendants next argue that inspection of the farms and other Argentine premises where Plaintiffs may have suffered exposure is essential to their defense. Therefore, the inability to access, inspect and conduct tests on the Argentine farms at issue is itself a hardship in this case. In response, Plaintiffs cite *Martinez I* where the Court found that an inspection would not be of benefit to the parties. This Court disagrees with Plaintiffs and distinguishes *Martinez I* as to this particular factor.

*Martinez I* involved claims brought by a woman whose husband died of asbestos-related disease after working in the Argentine textile plant.[33] The trial

---

[32] Id.
[33] *Martinez I*, 82 A.3d at 3.

17

court in *Martinez I* found that the view of the premises would not be necessary primarily because the exposure alleged in that case was decades-old asbestos which would likely no longer be present.[34] Here, this Court finds that a view of the premises is potentially more valuable than it was in *Martinez I*, since the physical characteristics of the farms at issue may have a legitimate bearing on the allegations in the complaint. The contention that airborne herbicides and/or other pesticides caused birth defects on neighboring farms because of their proximity to one another may require proof of how the farms are situated in relation to nearby sources of water, ventilation, and pollution. This Court finds that PM Defendants have established that, if forced to litigate in Delaware, the inability to view the premises or obtain information about other possible sources of exposure represents a hardship under the third *Cryo-Maid* factor.

**4. Whether the controversy is dependent upon the application of Delaware law which the courts of this State more properly should decide than those of another jurisdiction.**

As determined by prior briefing on the issue of choice of law, the majority, if not all, of the issues in the case are dependent upon the application of Argentine law. The governing law is set forth in Spanish. While there may be unresolved issues related to choice of law prior to the *Bell Helicopter* ruling, it is clearly noted from the ruling of the Supreme Court that:

---

[34] *Id.*

[I]t generally makes no logical sense to apply different laws to these elements in the same case. To do so risks subjecting litigants to a law of the case that is not the law of any jurisdiction, but is instead an eclectic blend of various sovereigns' laws crafted by a judge into a bespoke tort law fitted for a particular case.[35]

The Court appreciates that other cases may have allowed such approaches on prior choice of law analyses but this Court declines the invitation from Plaintiffs to create such a hybrid. Although Plaintiffs maintain that this Court is not being asked to resolve novel issues of Argentine law, the record is replete with arguments from both sides to the contrary. In many instances throughout this litigation, the parties request that this Court can interpret a Spanish word to give it the desired meaning.[36] As this opinion is not intended to rule on choice of law issues, the parties' respective positions regarding choice of law are offered by way of example only as relevant to this Court's analysis of the fourth *Cryo-Maid* factor.

For example, Plaintiffs agree that the applicable substantive law in this case is Argentina but they seek punitive damages under Delaware law. Defendants argue that Argentine law should apply and the remedy of punitive damages is not available in Argentina. While this Court could simply find that Argentine law will

---

[35] *Bell Helicopter Textron, Inc.*, 113 A.3d at 1052 n.28 ("[o]nly extraordinary circumstances should justify unraveling the connections between the duties defendants owe and the remedies afforded to plaintiffs in the event of a tort.(*See e.g. Simon v. U.S.*, 805 N.E.2d 798, 802-803 (Ind. 2004)("[L]egislatures 'may enact a given law only because of its expected interaction with a complementary law.'…Consequently, applying the law outside the context of other laws in the jurisdiction may contravene legislative intent….As Brainerd Currie said, a party "should not be allowed to put 'together half a donkey and half a camel, and then ride to victory on the synthetic hybrid.'"")(internal citations omitted)).

[36] Although fluent in Spanish and from Latin America, this Court has received no legal training in Latin America or in any other language except English.

19

apply to the issues of liability and damages, Plaintiffs argue alternatively that an interpretation of certain Spanish words in Argentine's Civil Code would permit for punitive damages. Of course, the experts disagree and this Court would be asked to resolve this dispute.

On the issue of duty and causation, there is disagreement regarding the meanings to be given to key words such as negligent behavior or "culpa" as that word is defined under Argentine law. The Court is being asked to consider whether the "redefinition of 'consumers and users' in a 2008 amendment to the CPL retained the requirement of "final consumption" in order to determine whether Plaintiffs fall within the protection of the CPL. There is also the question of whether the Argentine legislature intended to make their 2008 CPL amendment retroactive such that it would affect the alleged injuries in this case that occurred before 2008.[37] Further, Plaintiffs have alleged a cause of action under Article 1081 of the Argentine Civil Code against Defendants for being an accomplice to, or instigator of, a "delict" which is defined as "an unlawful act perpetrated knowingly and with the intent of harming a person."[38] Plaintiffs allege that PM Defendants aided and abetted the actions of Tabacos and Messalin in causing the toxic

---

[37] All of the minor Plaintiffs in this case were born before the effective date of the 2008 CPL amendments. *See Compl. ¶ 12-27.*

[38] *See* Rosenn Aff. ¶ 56; *see also* Garro decl.¶ 57 ("[A] wrongful act perpetrated with intent to harm or 'dolo' is called a 'delicit'").

20

exposures which resulted in Plaintiffs' injuries and damages.[39] This requires an interpretation of words such as "delict" and "dolo". Further, under the Argentine analogue to the agency theory of liability brought here, liability for the acts of a "dependiente" is a concept found in Article 1113 of the Argentine Civil Code.[40] However, neither this word nor its English translation ("dependent") appears in the Complaint. Nevertheless, Plaintiffs argue for its application in the context of PM Defendants' alleged relationships to either Tabacos or Messalin in order to establish a nexus of liability.

As in *Martinez I,*

> [w]hile Delaware courts are frequently called upon to interpret and apply foreign laws, when those laws are in Spanish and have been enacted in the context of a civil law system originating from the Napoleonic Code [as in Argentina], the application of foreign laws imposes that much more of a hardship.[41]

The Delaware Supreme Court expanded upon that point in *Martinez II* and stated that the trial court "permissibly concluded that [Argentine] issues were more appropriately determined by the courts of the only sovereign whose law is at stake—Argentina—just as this Court has recognized that novel or important issues of Delaware law are best determined by Delaware courts."[42]

---

[39] Compl. ¶ 179.
[40] *See* Rosenn Aff. ¶ 53, Garro Decl. ¶ 60.
[41] *Martinez I*, 82 A.2d at 33.
[42] *Martinez II*, 86 A.3d at 1106-07 (citation omitted).

21

This Court is being asked to decide complex and unsettled issues of Argentine law based on expert testimony and affidavits expressed in Spanish. Just as we have substantial interests to have open questions of Delaware law decided by our courts, this Court weighs the importance of Defendants interests in obtaining an authoritative ruling from the relevant foreign court on the legal issues that will determine its exposure to liability and damages, rather than a non-authoritative ruling from this Court.[43]

The laws of Delaware have no rational connection to the causes of action in this case. Like *Martinez I and II*, these are not complex commercial lawsuits and this Court finds that the controversy is not dependent upon the application of Delaware law which this Court should decide.

### 5. Pendency or nonpendency of a similar action or actions

The parties dispute whether actions involving similar allegations have been filed in Argentina.[44] For purposes of its analysis, the Court will assume that Delaware is the only forum in which an action is pending concerning the injuries alleged in this case. While Plaintiffs' counsel has filed five other identical actions against the same group of Defendants in this Court alleging the same or similar

---

[43] *Id.* at 1109.

[44] Defendant Philip Morris USA asserts that prior actions were filed involving similar issues against other third-party tobacco companies (*see* PM USA Op. Br. at 27); Plaintiffs assert that those cases are "irrelevant" and have been voluntarily or otherwise dismissed years ago (*see* Pltfs. Opp. Br. at 38-39).

22

injuries, each of those actions has been stayed pending the outcome of the instant case.

This Court recognizes that it should be reluctant to dismiss a case for *forum non conveniens* where there is no action pending elsewhere.[45] However, like in *Martinez I,* it has been established in this case that Argentina has a Civil Code system that include elements of liability and damages. The parties have acknowledged as much since they have agreed as to the appropriate substantive law to be applied in this case. Nevertheless, the Court is unclear as to whether similar cases are pending in other jurisdictions. Given these competing arguments, the Court will accept Plaintiffs' position that this factor weighs in their favor.

### 6. Other practical considerations

At the outset, this Court recognizes that the Supreme Court declined to adopt a broad mandate that a trial court should consider public interest factors such as the efficient administration of justice (i.e., "easy, expeditious, and inexpensive" litigation), but allowed that in a "proper case," a trial court may evaluate such factors.

This Court notes that ten of the thirteen Defendants have been dismissed in this case for lack of personal jurisdiction. The two main Argentine Companies, Tabacos and Massalin, which had direct responsibilities associated with the use of

---

[45] *Martinez I*, 82 A.3d 1, 34 (citing *Marine Lines v. Domingo*, 269 A.2d 223, 226 (Del. 1970)).

23

Roundup on Plaintiffs tobacco farms, were never named in this action and are also not subject to personal jurisdiction in Delaware. Yet Plaintiffs plead allegations against all Defendants by grouping them as the "Philip Morris Defendants" and the "Monsanto Defendants", as having controlled Tabacos or Massalin, and allege through various legal theories that the remaining three Defendants in Delaware are responsible for Tabacos or Massalin's actions or inactions. These Defendants are in Delaware solely because of Defendant's incorporation status even though this fact has little importance to the Plaintiffs' claims.[46]

Without deciding the merits of Defendants' arguments regarding Plaintiffs' bundling of corporate structures through the collective use of "Philip Morris Defendants" and "Monsanto Defendants", it is not lost on this Court that litigating this suit in Delaware may circumvent corporate separateness and omit parties who may bear direct or indirect responsibility for the alleged harm in this case. This Court agrees that the presence of essential actors in another forum, and the inability to join them in these proceedings, is a factor that favors dismissal.[47]

Finally, Plaintiffs argue that Argentina will not provide an adequate forum. This Court disagrees. Argentina is a civil law jurisdiction with its own courts and court rules that are capable of hearing this type of case. In addition, this Court

---

[46] *See IM2 Merch. and Mfg., Inc. v. Tirex Corp,* 2000 WL 1664168 (Del.Ch.Nov. 2, 2000); *See also Nash*, 1997 WL 528036.
[47] See Summer Sports, Inc. v. Remington Arms Co., Inc., 1993 WL 67202 (Del. Ch. Ct. Mar. 4, 1993).

recognizes the logistical issues (immigration or otherwise) of bringing litigants and their witnesses to Delaware to have their day in court and is mindful of the impact caused by language barriers. From the litigants' standpoint, they are precluded from telling their story in their own language. While we have generically characterized the language in Argentina as "Spanish", dialects, nuances, cultural considerations play a role in what it means to provide appropriate interpreters.[48] While this Court may have access to Spanish-speaking interpreters, the Court considers this factor when called upon to receive 406 similarly situated litigants.

This Court disagrees with the assertion that Plaintiffs could not properly have their matters heard in Argentina. Unlike Delaware, Argentina has a strong and distinct interest in legal determinations regarding the safety of products that are affecting their children and families. The 406 litigants and all witnesses would face no cultural or language barriers. Their cases would be heard in their native language with a proper understanding of the parties' interests at stake. Because Argentina has a forum in which to litigate these types of claims, the sixth and final *Cryo-Maid* factor weighs in favor of PM Defendants.

---

[48] In Argentina, the majority of the population speaks "Rioplatense Spanish." This dialect is often spoken with an intonation resembling that of Neapolitan Italian. Plaintiffs have not addressed whether Delaware has the resources to serve this language need.

**CONCLUSION**

This is not a dispute that implicates any aspect of the substantive law of Delaware nor is there any relevant evidence or witnesses located here. It is not a dispute where versions will be explained in English. Plaintiffs chose Delaware based solely on one thread of corporate status and seek to resolve the claims of 406 foreign nationals for alleged wrongs that occurred in Argentina. The Court finds that PM Defendants have demonstrated to this Court's satisfaction that they would face an overwhelming hardship if forced to litigate this case in Delaware under the six *Cryo-Maid* factors. For these reasons, PM Defendants' Motion to Dismiss under the doctrine of *forum non conveniens* is **GRANTED**. As this dismissal is dispositive, the Court does not consider PM Defendants' other motions.

**Monsanto's Motion to Dismiss**

As noted, Monsanto declined to join PM Defendants in their motion to dismiss under *forum non conveniens.* The Court agrees that there is no requirement that all defendants join a *forum non conveniens* motion.[49] While Plaintiffs agree that there is no requirement, they argued against dismissal of PM Defendants because all Defendants would likely be pointing the proverbial finger at each other such that they should remain together in this case. Plaintiffs argued

---

[49] *Blum v. Gen. Elec. Col,* 547 F. Supp. 2d 717, 724 (W.D. Tex. 2008)("The Court is aware of no authority contradicting Defendants' unchallenged assertion that where dismissal pursuant to the doctrine of *forum non conveniens* is warranted for some [parties], there exists sufficient cause to sever otherwise properly joined parties.").

26

that it did not "make sense" to dismiss only two of the Defendants. This Court disagrees.

As alleged in the Complaint, the case against Monsanto focuses on product liability and negligence. It focuses primarily on the Monsanto Defendant's role regarding the development and manufacturing of Roundup or other pesticides containing the glyphosate-based herbicide and their marketing strategies in Argentina. The claims are separate. As such, it turns to Monsanto's separate motion which seeks dismissal under Superior Court Rules of Civil Procedure Rules 8, 9 (b) and 12(b)(6).

### *Standard of Review*

Although this case centers on events that occurred in Argentina, Delaware pleading standards govern the dispute. [50] When deciding a motion to dismiss for failure to state a claim under Superior Court Rule 12(b)(6), all-well pleaded allegations in the Complaint are to be accepted as true,[51] and the Court must draw all reasonable inferences in favor of the non-moving party.[52] The complaint will be dismissed only if it appears to a certainty that under no set of facts which could be proved to support the claim asserted would Plaintiff be entitled to relief.[53]

---

[50] *Fluitt v. Advance Auto Parts, Inc. (In re Asbestos Litig.)* 2014 WL 600038, at *1-2 (Del. Super. Ct. Jan. 29, 2014).
[51] *Spence v. Funk*, 396 A.2d 967 (Del. 1978).
[52] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (quoting *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002).
[53] *Id.*

Delaware Superior Court Rule of Civil Procedure 8 requires a statement "showing that the pleader is entitled to relief."[54] A Delaware court should "assume[] that all well pled facts in a complaint are true when considering a motion to dismiss under Superior Court Rule 12(b)(6);" however, "conclusory allegations that lack a factual basis will not survive a motion to dismiss."[55]

## *Analysis*

Monsanto argues first that Plaintiffs cannot proceed under the Argentine Consumer Protection Law because: Plaintiffs are, by definition, commercial users; that Argentine law only makes the CPL available to end users; or that a 2008 amendment to the CPL cannot be retroactively applied to include Plaintiffs. Second, Monsanto argues that Plaintiffs cannot pursue a breach of warranty claim under Argentine law because: Plaintiffs are not consumers by definition and glyphosate is not a "non-consumable good" as contemplated by law; and because Plaintiffs have not alleged privity of contract between the parties. Third, Monsanto moves for dismissal of Plaintiffs claims for strict liability because: Argentine law has been interpreted to make the manufacturer liable only where the product has been alleged defective; and Plaintiffs have only alleged the product entails risk to the user.

---

[54] Del. Super.Ct. R. Civ. P. 8.
[55] *Shah v. Am. Solutions, Inc.* 2012 WL 1413593, at *2 (Del. Super. Ct. Mar. 8, 2012).

Finally, Monsanto moves for dismissal because the Complaint fails to satisfy Rule 9(b) requirement that allegations of negligence be stated with particularity. The Court addresses dismissal under Rule 9(b) as dispositive and need not address the remaining arguments under Rule 12(b).[56]

Negligence claims must be pled with particularity pursuant to Delaware Superior Court Rule of Civil Procedure 9(b).[57] Under Rule 9(b), "[i]n all averments of…negligence…, the circumstances constituting…negligence…shall be stated with particularity."[58] With respect to the requirement of particularity, Plaintiffs respond by indicating that pretrial disclosure "will undoubtedly create a record specifying what Monsanto did, what its subsidiary did, and what acts were taken jointly or in concert." [59] Plaintiff further responds that Monsanto is advised "in detail *inter alia* that their Roundup *and other glyphosate containing products* were defective and wrongfully marketed.[60] This Court is concerned with Plaintiffs' response. Monsanto Argentina has been dismissed for lack of personal jurisdiction and "other products" and "other pesticides" have been alleged. As explained in *In re Benzene Litigation:*

---

[56] Monsanto argues that Plaintiffs have not stated a claim under the Argentine CPL for breach of warranty, strict liability, and negligence. Because the arguments for dismissal require the Court to define or interpret the meaning of Argentine law, it seems illogical to agree to interpret definitions or terms under Argentine law when just a few pages ago, this Court cautioned against this exercise.

[57] *Gray Dawn Acres, LLC v. Lockwood,* 2012 WL 1413574, at *1 (Del. Super. Ct. Jan. 26 2012); *Browning v. Data Access Sys., Inc.,* 2011 WL 2163555, at *2 (Del. Super. Ct. Jan. 31, 2011)("Negligence claims must be pleaded with greater particularity than other claims.")

[58] Del. Super. Ct. R. Civ. P. 9(b).

[59] Plaintiffs' Response Br. to Monsanto's Motion to Dismiss at 30.

[60] *Id.* (emphasis added)

29

> [P]roduct defendants must be able to ascertain whether other entities…should be brought into the litigation as third-party defendants. This can only occur after the defendants are advised of the specific product(s) at issue, and the time frame of the alleged exposure. Finally, defendants must be able to evaluate the condition and composition of the products and/or premises at issue at the time of alleged exposure and compare these conditions to those that have existed at other relevant time frames (such as the time of manufacture or the time control of premises is ceded over to a third party) in order, *inter alia,* to determine if others may be liable for subsequent alterations to the product or the premises.

In a toxic tort case, "defendants are entitled at the pleading stage to isolate the wrong they are alleged to have committed, and to distinguish their behavior…from the behavior of other defendants."[61] "This can only occur after the defendants are advised of the specific product(s) at issue, and the time frame of the alleged exposure."[62] "Without identifying specific products, Plaintiffs cannot prove the quantity of exposure, *ie.,* the dose, or show that Defendant's products were a substantial factor in causing [Plaintiff's] injury."[63] In *In re Benzene Litigation*, the Court attempted to strike a balance between the interests of the parties. The Court recognized that, "[t]oxic tort plaintiffs usually cannot identify the products by brand name or the premises by address, nor should they be expected to do so."[64] As a result, "plaintiffs must attempt to draw a picture for [those] defendants by

---

[61] *In re Benzene Litig.,* 2007 WL 625054, at *7 (Del. Super. Ct. Feb 26, 2007).
[62] *Id.*
[63] *Smith v. Benjamin Moore & Co.,* 2012 WL 2914219, at *2 (Del. Super. Ct. July 18, 2012); *In re Benzene Litig.,* 2007 WL 625054, at *7 ("These defendants must be given fair notice of the claims, including the products that are alleged to be defective and some well-directed sense of time, locations, and general circumstances of the exposure.").
[64] *In re Benzene Litig.,* 2007 WL 625054, at *8.

pleading factual circumstances that may not otherwise be required."[65] Thus, the Court found that,

> Notwithstanding Rule 8's endorsement of "concise and direct" pleadings, in a toxic tort case, plaintiffs may well be required to plead more than they would plead in a typical products liability complaint in order to achieve the same result: a concise statement that provides the defendants with fair notice of the claim(s) including the identity of product and/or premises at issue.[66]

Here, Plaintiffs have failed to satisfy this requirement. Plaintiffs' Complaint fails to adequately identify the duration of exposure with respect to Plaintiffs' claims. Additionally, the Complaint fails to adequately identify the alleged tortfeasor.

Plaintiffs brought this claim against numerous entities, including both Monsanto Company and Monsanto Argentina, S.A.I.C. Plaintiffs continue to refer to the separate entities as "Monsanto Defendants," leaving this remaining Monsanto to guess whether the alleged tortious act refers to them. As a result, it is impossible for Monsanto to evaluate which allegations are actually directed at them. In addition, Plaintiffs allege that the conduct of marketing practices by Monsanto Defendants began "in the early 1980s".[67] In the context of these tort claims, Plaintiffs must plead with specificity which defendant caused the alleged

---

[65] *Id.*
[66] *Id.*
[67] *See* Compl. ¶ 118.

harm, what products caused the harm, how the harm occurred, and when that harm occurred.[68] As to Monsanto, this remains unclear.

Plaintiffs allege that their injuries could have stemmed from any number of products, including other herbicides and pesticides. Furthermore, Plaintiffs fail to sufficiently plead how the injuries occurred; as currently pled, they could have suffered the injuries from sources unrelated to Monsanto. Although this Court recognizes that vague claims may be sufficient if they give the opposing party fair notice, this remaining Monsanto defendant when grouped with a dismissed defendant, does not currently have adequate notice regarding what products caused the harm, the cause of Plaintiffs' injuries, how they occurred or when the harm occurred.

Plaintiffs must identify the products at issue at the outset of the litigation, not after discovery.[69] Presently, Plaintiffs cannot satisfy Rules 8 or 9(b) by engaging in the group pleading as to the Monsanto Defendants without providing Monsanto notice of what they allegedly did wrong. [70] As to Monsanto's Motion to Dismiss under Rule 9(b), the motion is **GRANTED with leave to amend**.

---

[68] *Cf. Crowhorn v. Nationwide Mut. Ins. Co.*, No. Civ. A00C-06-010 WLW, 2001 WL 695542, at *4 (Del. Super. Apr. 26, 2001) (Rule 9(b) requires plaintiffs to allege "who, what, where, when, and how").

[69] *In re Benzene Litig.,* 2007 WL 625054, at *8 ("courts must resist invitations to avoid earl scrutiny of pleadings amidst promises that discovery will put flesh on the bare bones of a complaint. Protacted discovery and extensive motion practice to ferret out those defendants who are not implicated in a given [controversy] are not acceptable substitutes for proper pleading").

[70] *Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.,* 854 A.ed 121, 146 (Del. Ch. 2004)("[O]blique references to false statements allegedly made by 'each defendant' will not serve to attribute misrepresentations to all defendants in an action."); *In re Citigroup Inc. S'holder Derivative Litig.,* 964 A.2d 106, 134 (Del. Ch. 2009).

Plaintiffs have *sixty days* from the date of this Order to amend the Complaint to comply with the specificity requirements of notice pleading.

**IT IS SO ORDERED**.

/s/ Vivian L. Medinilla
Judge Vivian L. Medinilla

cc:    Prothonotary